May I reserve three minutes for rebuttal? She can't do it for you. Just watch your time. I would like to reserve three minutes for rebuttal. Sorry, my mistake. Good morning, Your Honors. May it please the Court. Kenneth Yun for Appellant Youngsuk Kim. For the benefit of the people here, I'm going to go over a little bit of the facts. The first thing I want to say, though, is thank you for the opportunity to present this appeal from the District Court's denial of class certification based upon what we believe is error with respect to excluding the expert testimony of Dr. Forrester. Dr. Forrester relied on the expert opinion of Dr. Moronic. Dr. Forrester is an economist, math guy. Dr. Moronic is a surveyor or questionnaire person. I want to make sure I have the facts straight here. The judge found that Dr. Moronic's report, if you will, was admissible. He found his methods reliable, everything else. So your argument, I take it in a nutshell, is that the court then couldn't reject Forrester for relying on Moronic's report because, well, among other things, the federal rules say that an expert's entitled to rely on matters in evidence. Yes, this court has an opportunity to. I'm not worried about our opportunities. I'm worried about what the law is. So your position is that once the judge said Moronic's report is admissible in evidence, then an expert is always entitled to rely on other evidence in the case to arrive at his opinion. Basically, that's not the first part of our argument. It's the best part of your argument. It's the best part, yes. In this case, we would like to- Please accept the help. Yes, Your Honor, yes. Yes. The answer is yes. So now here's my problem with- Forrester says two things. He says, I have an opinion about how a model for benefit of the bargain damages. The judge only rejects that because he says, well, it relies on raw data from Moronic. So I understand what your objection is to that. On this other model, his restitution model, which I must admit that I barely understand, the judge has a separate problem with the restitution model. He doesn't say, I'm rejecting it simply because it relies on statistics. He has a much more fulsome explanation of why he's rejecting the restitution model. Tell me why the judge- Now, it doesn't mean he should have denied class certification because if the other model works, then he shouldn't have denied class certification for that reason. But why was the judge incorrect in rejecting the restitution model? So the restitution model is based on a few facts. Obviously, the first fact is how much money did the defendant obtain from the sale of the products? He had that numbers report. He also had in his report where did that come from, the cost basis. He took an analysis of the evidence in the record about how these sushi rolls are made. And he from that factored out how much crab is in the sushi roll and then a value for the crab. Yeah, but he made this. You see, this is my problem. I understand it on the benefit of the bargain side. He then goes through this elaborate analysis that says, well, I can look at places that sell real crab. Now, I'm figuring out what somebody would pay for one of these had they known the truth. And he applies all these percentages and waves his hands in the air and says, here's the number and it's less than what they were charging. And therefore, the difference is the amount of restitution. More than that. Let me explain that. Let me get to the end of my question. Does the restitution model arrive at a different number than the benefit of the bargain model? The restitution model is a different way of calculating it. So it would be different. I just don't want to ask. It would arrive at a different number. Does it arrive at precisely the same number? No. Well, how is it different? What has the number different? So under the restitution, under the law of restitution, you take the value. The difference is a different measure. I understand. I understand the law of restitution. I'm trying to figure out your expert's testimony. When I read the expert's testimony, which has other problems, I'm not sure whether it will apply 25 percent or 50 percent or 75 percent or 100 percent. And the judge points out to those problems. I don't want to talk about that for the moment. I want to focus on it seems to me the way he calculates restitution is exactly the same way he calculates benefit of the bargain. He's saying they paid more for this than it was worth. No. The court is perhaps looking at the regression analysis and applying it to the restitution. Those are two different analyses. So in order to figure out the amount of restitution, let's just take one customer. Yes, one customer. The average customer. They paid $10. What are the two numbers? The first number is what they charged for it, right? How much they paid. And that's also the first number in the benefit of the bargain model. Yes, that's true. Now what's the second number? The value minus the value. Minus the value. Yes. And when we figure out benefit of the bargain, what's the comparator number? In the benefit of the bargain, we look at how much that they thought they were buying and how much they were getting. How does he calculate the value under your restitution model? He looks at how much. Well, he just looks basically. He provides a summary of the company's data of how much they sold. That's the primary number he gives. But how does that provide any basis for calculating? I'm not sure it matters, by the way, because I'm sure you'd be perfectly happy to go back and argue one model rather than two. But the judge says, this is all gobbledygook. How do I know? Restitution is the difference between what something was worth and what something you paid for. And I'm not sure how the comparator number establishes worth. Obviously, everything that anybody sells costs the person who sells it less than the person who buys it because otherwise they wouldn't sell it. So tell me what basis your expert had for establishing the worth of the various items except consumer expectations about what they would include, which was his basis for his first opinion. So, again, the regression analysis, and I don't think it's – I think it's quite remarkable what he did. He just simply took other restaurants in the vicinity of Benihana restaurants and looked at those and narrowed it to those restaurants that had on the menu item two different items, two different options for the same item. One with real crab, one with fake crab, fully disclosed. And he took the delta between those, which is, I think, in his report, three or four dollars, and then he normalized that with respect to – But what other people were charging doesn't establish the value. You see, I understand the bargain. I would have got bought someplace else for less money, but how does it establish for restitution purposes that they were unjustly enriched by charging more? It gives half of the – well, first, it doesn't really apply to the restitution. It's the benefit of the bargain. That's right. I'm okay. I'm assuming – you've got to go back and convince the district judge if we reverse that your benefit of the bargain model works on other grounds. The only ground the judge rejected it on was that it was based on – based on the data from Aranex's report. You don't have to defend it on those grounds here because those aren't in front of us. But I'm just trying to figure out what – how the restitution model works because on that one, the judge said essentially this is all gobbledygook. Well, I think the key to the restitution model is exactly as Your Honor said is that the average consumer looking at something like a food product at a restaurant, that amount of decision making by a jury isn't terribly outside the realm of the jury. So really what you're telling me is that the comparator there – because the top number is the same. What did you charge for it? The comparator there is based on what people would have paid for an item – a similar item knowing the truth at another restaurant. Well, that's – Yes? There were deltas and there were regressions. The math is a little bit different, but the ultimate conclusion is something very similar to that, yes. Okay, and that's different than the benefit of the bargain model in what way? Well, the benefit of the bargain is going forward. It's like how much – what should you have gotten? What would they have paid in the future? No, not the future, but like if I'm buying something and I was expecting something else, then there's that increased amount that I was – I didn't get the benefit of the bargain. You overpaid. I overpaid. The other one is give me back the money that for what I – under restitution, you can't get it for free. No, I understand it. I understand the conceptual difference between the two. I'm fine with the conceptual difference. My difficulty is that I think at the bottom line is they're both calculated the same way by your expert. He basically says, I know what you charged, and the difference – the benefit of the bargain is what you would have paid for the real thing, and the restitution is what you would have paid for the real thing. So I think they're not any different. But let me ask you to address the California roll class. I think, well, one's legal, one's equitable. Yeah, of course, they sometimes might get to the same place. In terms of California roll, they're common. If they get to the same place, then I'm not sure what the damage is from keeping one out rather than the other. But let me – California roll. Your client's basic claim, as I understand it, was that when I read these menus, notwithstanding the footnotes, and they said crab, I thought it meant crab. The claim with respect to the California roll is that any good Californian or sushi eater would know that California rolls are supposed to have crab, and therefore, notwithstanding the footnote, this was a material omission. My difficulty is that his claims, the claims he actually has, are not typical of the California roll class, which is based on an assumption and an omission. He may share that assumption, but his claims aren't based on a material omission. His claims are based on what he says is a material misrepresentation. So isn't the judge correct in saying he's not an appropriate representative of the California roll class? I don't think the court got to that point. I think the court addressed the commonality, said they're not common. Okay. Well, whether it's commonality or typicality or standing or whatever, address that problem. Forget what box I put it in for a moment. So I think the way we look at it is just a very common sense approach. If you look at the items on the menu, they're all variations of the California roll. Well, but they're all items that have the word, except for California roll, say crab. And I understand that he didn't buy each of those ten items, but his claim as to the ones he didn't buy is typical of the class, which is to say his claim on the ones he bought was I was misled. But he never bought the California roll. So his claim as to his claims that he does have are not typical of the class on the California roll, are they? It's substantially similar, Your Honor. That's our argument. But they're not substantially similar. They have the dagger. Nobody's claiming an omission on the other ones. They're claiming an express misrepresentation. The dagger is the same across all the items. The item – There's not a dagger as to the California roll, is there? I believe there's a dagger, Your Honor. There is a dagger. There's a dagger. But that's not the issue. The issue is there's no misrepresentation on the California roll. So you're saying there's an omission. What you should have said was California roll with crab, footnote, not real crab. I don't know what they should have done. And you're saying, well, everybody knows California rolls have crab, so this is a material omission. And my problem is your client's not basing his other claims on a material omission. He's basing them on what he says is an express misrepresentation. Now, you can probably find another plaintiff who has this claim, but I think the judge is probably right in this case saying his claims are not typical of this subclass. Our argument is that the decision was based on commonality. That basis should be overturned. So let's assume that he said commonality, but it meets all the requirements of typicality. And it meets all the requirements of typicality. He said commonality, but the truth is you fail on typicality. Do we really send it back to him and say, Judge, you should have said typicality, not commonality? Our request is that you send it back and overturn it. Well, he actually said both, didn't he? Didn't he say typicality first and then change it to commonality? In that sense, he did sort of cover both, but then he corrected it because I think he meant to say what the district court meant to say what they said at the end. But the district court did address typicality part of that. Yeah, but the facts he relied on, however he labeled them, would suggest there's no typicality here, don't it? Well, no, because, again, our point is that there's that dagger. The dagger is the same. is not exactly the same, but they're close enough to allow for him to represent that group of people. See, but your claim would be exactly the same if there was no dagger. It wouldn't be. Yeah, because you're saying everybody knows California rolls have crab, so I don't even have to look at the dagger. That's your claim on everything else. You said crabs. Why would I look at the dagger? Here your claim is everybody knows California rolls have crab, so why would I look at the dagger? That's a different claim. The facts of the claim are different, but the claim is still misleading. It violates the law. I have one other question, and I think you can answer this quickly. This substantial similarity doctrine, which some district courts have adopted, is there any Ninth Circuit or Supreme Court case that adopts a substantial similarity doctrine? I don't have that with me, Your Honor. Thank you. Okay. Well, you've got 20 seconds. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. Emily Musgrave on behalf of Defendant Apelli, Benihana, Inc. The plaintiff offered evidence of two theories of damages in this case, the so-called benefit of the bargain model and the restitution model. Both came exclusively from the plaintiff's expert witness, Dr. Forrester. As this Court has repeatedly instructed, the district court rigorously analyzed the persuasiveness of that evidence. Oh, no, it did not. The district court didn't go through that evidence and do a dabbled analysis or find it unreliable. What the district court said was, I'm rejecting your benefit of the bargain analysis. Put aside the restitution one for a second. For one reason and one reason only. You relied on the survey data, the compiled data in Dr. Marinik's report, not the raw data, and I won't accept your opinion unless you looked at the raw data. And so that's the only basis on which the district court rejected the benefit of the bargain, right? I agree with Your Honor that that's the basis that's articulated. Okay, so we can make up some others. What else did you want to say then? I mean, you say that's what he articulated, but you're saying there's some implicit ruling in another respect? I'm not saying there's an implicit ruling. I'm saying that because of that reason, the court felt it needed to go no further on that benefit of the bargain analysis. But if we don't agree with it, then we've got to send it back down. I mean, that's part of the problem is this is the only issue teed up to us. There may well be lots of other problems. This may be a terrible benefit of the bargain analysis. You may have lots of other good arguments, and you may have made them below. But as it comes up to us, the district court's not addressed those arguments. It's only addressed the raw data argument, correct? That's right, Your Honor. I would always refer this court to the axiom that the court can, of course, affirm on any basis otherwise apparent in the record. Can't we do that in a case like this? I mean, I know we can on summary judgment, but can we do that here where we could? I mean, it seems to me we'd be stepping into an issue that we would normally give some deference to a district court on. I don't know that we can just take that out of their hands, can we? Well, I hear Your Honor's point, and it is an abuse of discretion standard. I think what I would say in this context is that the district court did not abuse its discretion because what we're talking about here, and I think this court has been quite clear about it, is not just admissibility at this stage. We're talking about overall persuasiveness of the evidence. Well, but see, let's assume for a moment that we're reluctant to address that in the first instance and just focus on the basis offered by the district judge here. I don't understand how an expert can't rely on another report that the district judge has already found was admissible. See, if the other report hadn't been found admissible here, I'd understand the argument. But the district court says, oh, Maronek's report is admissible, his methods are reliable, his opinions can come in. And the second expert says, okay, I'm looking at that report and it says this. So relying on that fact, I have an opinion. That's just expert evidence 101, isn't it? No, Your Honor, it's not, and here's why. The survey comes in, and I think this court has been pretty clear that in general, surveys come in. If there are problems with the survey, it goes to weight, not the admissibility. And it's a survey.  He was here as an economic expert, and as an economic expert. Right, and there may have been some problems with his underlying economic theory, but that's not what the district court looked at, is it? It said you can't rely on the survey to arrive at your opinions. And you can rely on things in evidence to rely on your opinions. It may turn out that your opinions are terrible, that they lack sufficient foundation elsewhere, but it's not an error to rely on evidence in the case to arrive at an opinion, is it? In this context, it is, because the evidence that he was relying on was a summary calculation of a raw data set. And as an economic expert, he would have needed to assess, for example, the variability in that data set, numbers that might be outliers. He would have had to assess individual numerical discrepancies to even determine whether using an average in the first place is appropriate. And because he didn't do any of that in this context, it's not even apparent whether the methodology is sound, because what he did is even worse, blindly using averages without examining what underlies them, which is simply not a sufficiently reliable methodology. So I actually think I agree with you, except that I don't think that that's what the district court said. Help me understand that, because the district court didn't go after his methodology. If the district court had gone after the methodology, I think everything you said would be correct. So help me out with that, because I read the district court to say, you just can't rely on these other summaries. I would refer the court to FER 17, which is what I understood the district court to be saying when the district court took issue. Here, I'm reading what the court said. And by the way, the court said some contradictory things along the way. So at 16, the court says, any issue with respect to Forrester's reliance on the Maronich Report is one of weight, not admissibility. I happen to agree with that. Then he says, but I'm going to exclude it, because he didn't even request access to the raw or underlying data to assess independently whether his conclusions were accurate. Well, once you've found that the Maronich Report is admissible, it seems to me the second expert is entitled to say, I assume its conclusions are accurate, I rely on them, and now I apply my expertise to arrive at a separate conclusion. The second step is not the one that the court addressed. He just said you couldn't rely on the survey data in Maronich's report. And because it was admissible, it seems to me it's clear you can rely on it. It may not get you anywhere. That's a separate issue, but you can rely on it, can't you? Well, and I would urge the court to understand reliability in this context, because we're not talking about a situation where he's relying, for example, on an architect or another field in which he has an expertise. No, he's relying on something in evidence. See, this is something that the court has said, all right, this can be admitted into evidence. Well, the court has said the survey can come in, and I agree, it's a survey, right? The survey can come in. But it's admissible. It's admissible. Somebody looks at a piece of evidence and says, all right, my starting block is that piece of evidence, and now I'm going to offer you my opinions based on that piece of evidence. And you're saying, oh, no, he can't rely on that piece of evidence, and that's my problem. And I think, like Judge Nelson, there may be lots of other reasons why the district court could have rejected Dr. Forrester's benefit of the bargain analysis, but that's not the one he offered. The one he offered was you're relying on the survey data rather than the raw data, which was not in the report. You should have gone behind the report and questioned its conclusions before you relied on its conclusions, but the court's already found that the conclusions were reliable. But I think the problem here is that those conclusions do not offer the data that an economic expert would need in this context. I tend to agree with you, but that's not what the judge said. Am I reading the right part? So this is the one where it says, Kim, this is at ER 17, Kim cites no authority to rebut the proposition that experts are required to verify the validity and reliability of the data. I mean, the problem is he's already found it reliable. That's what's confusing. So, I mean, what's the difference between validity and reliability of the data? Well, Your Honor, what I would point out is that he's found it reliable in the context of it being a survey, but this goes back to the point that I think Your Honor was agreeing with a moment ago, which is that that doesn't make it reliable as it damages model for an economic expert, and that's the problem that I think the court was trying to identify. But he didn't really say that, did he? I think that's the closest. He said there's no authority. I mean, and that goes back to how much discretion do we have. I mean, I guess the best case for you is that we interpret that sentence and say, okay, that's good enough, and we agree with this kind of extrapolation of what the district court might have meant to say. So your point would be, look, sending it back down is sort of a futile errand because all the district court's going to do is turn that one sentence into a paragraph and say, you know, this doesn't work. Correct, Your Honor. Okay. That's probably an accurate prediction, but how can we find that as a matter of law? We could say the judge said this, but we're pretty sure he meant that, and if he meant that, it would have been okay. That strikes me as a bridge too far. Well, I understand the court's hesitation, but coming back again to the standard of review, we're talking about an abuse of discretion on what is an evidentiary matter. The trial court has broad discretion in this context. What the trial court can't say is that an expert cannot rely on something that's been admitted in evidence as a basis for his opinion. He might say it's an insufficient basis, but he can't say it is error to rely on evidence in the case in order to reach your opinion. You would agree with that, wouldn't you? I actually wouldn't, Your Honor, and here's why. It's, again, back to this word rely. Rely on it for what purpose? And, again, I'm saying it is a survey. Look at the commentary to the evidence rules. When it says what an expert, one of the things an expert can rely on in arriving at an opinion is evidence in the case. Or an admissible evidence. Well, admissible evidence. This is admissible evidence. Yes, Your Honor. So we often see an expert who says, I wasn't at the scene of the accident, but somebody's brought in a picture, and the picture shows that the skid marks are 14 feet. And if they are 14 feet, I have no idea whether they are or not, my opinion is that the car must have braked in this way or that way. So people always rely, experts almost always rely, on stuff that they don't know whether it's true or not. They rely on evidence in the case. Yes, Your Honor, but they can't do so in a way that either abdicates their own responsibility in furtherance of their opinion, and they can't rely on evidence that masks the data they actually need. And that's the problem. It's not that they rely. I think they can. That's the problem. I mean, I don't think they have to go, in Judge Hurwitz's example, they don't have to go out and separately measure the skid mark. I mean, they can rely on what somebody else said. And I just wish the district court had done more here, because it does feel like, because this case is gone now, right? And then if we remand this, then you're going to go back and debate this issue and potentially other issues. I understand your frustration with it, but I don't, where's the case that says the expert has to go in and look at the underlying raw data of another expert that's already been admitted? I think that's what we're struggling with. I understand, Your Honor, and I think this case . . . Is there a case like that? That says that an expert has to actually look at the stuff that the expert is supposed to testify to? Well, that principle is there, but do they have to go get the raw data of when they're relying on another expert's summary, as happens here? Yes, Your Honor, I think that they do, and I think it's implicit in the line of cases . . . Well, but those cases don't deal with an expert relying on something that was admitted in evidence. Take your point, like there's the ConAgra case. So an expert says, I'm relying on something that's outside the record, and we say, wait a minute, you've got to establish that, you've got to establish those facts, because they're not facts. But in this case, the judge admitted the report, so he was relying on something that the judge admitted. So if I could modify . . . I'm not sure . . . There are cases that say you just can't rely on the opinion of another expert, but is there any case that says you can't rely on the opinion of another expert that's been admitted into evidence? Yes, Your Honor. Which case? In this context, I would refer the Court to Ellis v. Cosco and the Salih opinion, both of which say that in this context, admissibility is the starting point of the inquiry and not the end. Right, but my difficulty here is that the judge never got past that starting point. He said you can't rely on it. And the answer is you can. It may not make your opinion admissible later on because there's other problems. That's only the starting point. But at least you can rely on it, can't you? No, Your Honor, I don't think in this context you can. Again, and I'm not trying to parse words . . . No, I understand your point. . . . what does reliability mean, which is he's relying on data that doesn't serve the function that he needed for his model. We're talking about, just to be clear, and I see my time is up if I may finish my sentence. No, your time is not up. Oh, it's not up. Fantastic. Thank you. In this context, and just to make this a little bit more concrete, we're talking about the fact that there were only two inputs for his benefit of the bargain model, right? And one of those inputs is a summary of averages that the survey expert instead calculated. It's a summary of those averages. And the point that I'm trying to make about reliability in this context is that the data set that was under those averages is what this person should have been looking at. Well, but the court did find the summary to be reliable and admissible. As a survey, Your Honor, not as an opinion of damages. Okay. Yeah, your point is that there's an extra step, which, I mean, it's an interesting interpretation of it because you're saying there's an extra step that had to go in here. It's not just the admissibility, but you've still got to show that it's, you know, there's validity and reliability for purposes of bringing it, basically transferring it from a summary of evidence into an expert report. That's your argument. That's right, Your Honor. And I would say that although the survey is whatever the survey is, it's not itself a viable damages report. That's what Dr. Forrester was supposed to be doing. So even if the survey is admissible, and I think this goes back to Your Honor's questioning earlier, that doesn't provide a damages model in the case. If the court was correct on that approach, can plaintiffs go forward on the restitution damages? No, Your Honor. I think the restitution model is itself also fatally flawed, though for different reasons. And I'm happy to discuss that briefly, although now my time is definitely up, if I may. So I think the restitution model has a critical failure, too, actually. The first is that restitution in this context is different than if we had, for example, a $5 widget. We're not talking about something absolute in that way. In this context, restitution depends on the attribute of the product that is at issue here, whether it was crab. But a sushi roll has all kinds of attributes in it. It has avocado. It has rice. Going to Benihana is an experience. When you eat sushi, you are no longer hungry. All of these things are attributes, and this is the sort of part worth concept that the court in In re Enjoy was trying to get to. You need to isolate out the attribute that would be eligible for restitution. Usually that's done with a conjoint analysis. None of that happened here. So to simply abdicate all of that and say, well, the jury can just figure it out, and then apply four percentages that counsel selected, that's not a damages model either. Okay. Thank you. Thank you, Your Honor. I'll give rebuttal time. I think, yeah. Thank you, Your Honor. Thank you for the additional time. With respect to the summary of raw data, the actual numbers from ER 710, and the conclusion is there. Benihana says that there's additional work that Dr. Forster should have done. The district court didn't actually say you have to go and, you know, look at the raw data. Well, maybe it did. I mean, I guess the question is how do you verify the validity and reliability of the data if you don't look at the raw data? Well, he's not a surveyor, Your Honor. Benihana just made the argument that you have to assess the data. You have to look at the discrepancies in the data. That's what a surveyor does. That's what Dr. Maroney did. You see, here's my difficulty. It seems to me if you're trying to defend the broader proposition, you may have some difficulty. If we're trying just in front of us to say, look, he's entitled to rely on the survey. Whether or not that gives rise to a reliable opinion on his part is a separate issue. But all the district judge said was you can't rely on the survey. If you want to try to convince me that his reliance on it was justified or led to a good opinion, I'm not sure you want to do that because I don't think you want us to get into that issue. I think the simple thing is what we said in our papers is that the court created sort of a negative blanket rule that an expert relying on another expert has to double check the expert. And that's just a bad rule. The court says here's the proposition I'm relying on, that experts are required to verify the validity and reliability of the data on which they rely. And I guess your answer to that is not when that data has already been found to be valid and reliable by the district court and admitted it's evidence. Certainly. And the question the court had about having to go back again. I agree there's a difference between finding it reliable for purposes of being a survey or a summary and reliable for purposes of an expert opinion. Once it's admitted, it's admitted. And it's admissible. Yeah, I understand that. But now I'm starting to wonder whether all admissible evidence can just be relied on by the expert. I mean, I guess your point is we'll go ahead and go challenge that later, but that can't be considered the gatekeeping function. You can rely on it, but it may not be sufficient to give rise to your expert opinion. That's not what's in front of us now. What's in front of us is the court knows what's in front of it. And I think based upon this, it's pretty simple. In terms of where this came from, it came from Benny Hunter's argument to the district court relying on in re con agri foods, which they say doesn't really apply in their answering brief, which is. . . Con agri foods is a case where the expert was not relying on anything in the record. It was a surveyor who was relying on some other survey that he didn't do. And he just sort of parroted it and sort of basically, I think the word maybe was laundered it and didn't allow the defendant to cross-examine the underlying data, underlying. . . It's a totally different case. But that term out of context is where our court, our district court made this decision. So one out of context quote from a district court opinion comes into another district court to create another compounding problem, which now is before the Ninth Circuit, to fix, we ask. So let me just ask one final question here, at least my final question. Others may have others. All you're asking that we do in this case with respect to the benefit of the bargain analysis is to say to the district court, you couldn't have rejected it simply for that reason. And the court can then decide whether or not he wants to reject it for another reason. Well, you could do more, but yes, you could do that. Yeah, we could do more. We could do more, but be careful what you ask for, because I think you see some hesitation from us about whether the model really works under analysis. I think the court didn't really have the benefit of looking this as much time perhaps as the district court does at the facts of the model. The district court didn't either, though. Well, they had the opportunity, and it's more their purview. But in the sense of what I would also say is under restitution, the difference here in restitution is it's a simpler remedy, and if the court said it's simple, then we should simply be able to present it. So now I'm making myself a liar. The expert said, then I'd either apply a 25, 50, or 75 percent or 100 percent. He's saying a sliding scale should be applied. How is that a model? Without any indication of – I can file that expert report. Well, in that sense, then the jury should be able to – that we have provided enough information, including through the work he's done, to show that I can present the same evidence to the jury. Here's how you construct the role. Then you don't need the – if all that you're saying is here's the evidence, jury, you decide whether to apply 50, 25, 75, or 100. Or some number in between. Then it's not – you don't need an expert to present that model. Which is why we're saying that the rejection for certification based upon that theory of remedy is poorly based because it's based upon the expert. If the conclusion is that the expert's unnecessary, that this information can be presented simply to a jury, then that would be a grounds to support certification, not a grounds to reject based upon the expert report being rejected. Also, I'd like to add just – No, we're done. Thank you, Your Honor. Thank you. Thank you. The court – the case is now submitted and the court is done for the week. Thank you. All rise. Court is adjourned.
judges: HURWITZ, NELSON, Kane